UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TIMOTHY W. HANRAHAN, JR.,

                           Plaintiff,


      vs.
                                           9:07-CV-610

DR. MENNON, Herkimer County Mental          (FJS/GJD)
Health; EDGAR SCUDDER, Director of
Community Services, Herkimer County Mental
Health; and HERKIMER COUNTY
CORRECTIONAL FACILITY,

                           Defendants.

_____


TIMOTHY HANRAHAN, JR., Plaintiff *Pro Se*
KEVIN E. HULSLANDER, ESQ., For Dr. Menon[1]
THOMAS K. MURPHY, ESQ., For Defts. Scudder &
  Herkimer County Correctional Facility

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the

Honorable Frederick J. Scullin, Jr., Senior, United States District Judge, pursuant to

28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

     In this civil rights complaint, plaintiff alleges that while he was an inmate in

the Herkimer County Correctional Facility[2] ("Herkimer C.F."), employees of the

---

[1] Dr. Menon's name is properly spelled Menon and this court will use the proper spelling.
The caption of this case misspells her name.

[2] Plaintiff is currently an inmate in the custody of the New York State Department of
Correctional Services.

facility as well as two individuals from "Herkimer County Mental Health" were deliberately indifferent to his serious medical needs.  The Herkimer County Mental Health employees are Dr. Anandavalli Menon, a psychiatrist, and Edgar Scudder, the Director of Herkimer County Mental Health Department.  Plaintiff claims that he was denied treatment and medications by "Herkimer County Mental Health" which had the responsibility to treat mental health problems at Herkimer County C.F. (Compl. ¶¶ 1-5).

Plaintiff's complaint contains a number of exhibits, including his inmate complaint to the Herkimer County Sheriff (Exhibit B) and various responses to his grievance, including a response from a coordinator named Kim Salm (Ex. B-6); a response to his grievance from Lt. Coddington (Ex. B-4); and a response from Capt. McGrail (Ex. B-2).

Presently before the court[3] is a motion for summary judgment brought on behalf of Dr. Menon, pursuant to FED. R. CIV. P. 56 (Dkt. No. 20).  *Pro se* plaintiff Timothy Hanrahan opposes defendant Menon's motion (Dkt. Nos. 27-29). Defendant Menon has filed a reply. (Dkt. No. 28).  For the following reasons, this court will recommend that defendant Dr. Menon's motion be denied ***without prejudice***.

---

[3] The Herkimer County defendants have also filed a motion for summary judgment, however, this court will consider that motion in a separate Report- Recommendation. (Dkt. No. 35).

**DISCUSSION**

1. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Id*.  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

2. **Facts**

Plaintiff's complaint in this case concerns only allegations surrounding his

incarceration at the Herkimer County Correctional Facility beginning on April 12, 2007. (Compl. Facts ¶¶ 1, 5).  Prior to December of 2006, plaintiff was an inmate in New York State custody and during mid-December 2006, plaintiff was released to New York State Parole supervision.  (Compl. Facts ¶ 4).  According to plaintiff, he was rearrested and placed in the Herkimer County C.F. on April 12, 2007.  (Compl. Facts ¶ 4 & Ex. C).  Plaintiff alleges that "within days" after entering the Herkimer County C.F., he requested an examination by personnel from the Herkimer County Mental Health Department. (Compl. ¶ 1).

Plaintiff states that he had been suffering from depression, anxiety, and panic attacks since the early 90's, and that he had been hospitalized a few times, but was never treated until April of 2005. (Compl. Facts ¶ 1).  Plaintiff states that he was originally denied medication when he entered the New York State Department of Corrections in June of 2005. (Compl. ¶¶ 3, 6).  After plaintiff was released on parole, he began working, but he states that his mental problems caused him to be re-arrested in 2007, resulting in his incarceration in the Herkimer County C.F. (Compl. ¶ 4).

Plaintiff claims that after his incarceration in the Herkimer County C.F., he was denied adequate medical care under the "Patients Bill of Rights", and his mental health problems were ignored. (Compl. ¶ 5).  Plaintiff's complaint is very sparse, and does not even mention Dr. Menon.  Because of the liberality with which *pro se* complaints are treated, the court has reviewed the exhibits attached to plaintiff's

4

complaint, including the complaints that he made at the Herkimer County C.F. to determine plaintiff's claims in this case. The court has also considered plaintiff's response to defendant Menon's motion for summary judgment.

**3.     Medical Care/Personal Involvement**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id*. at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

It is also well-settled that in order to be held liable for damages in a section 1983 action, a defendant must have been personally involved in the alleged violation. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)(citing *Wright v. Smith*, 21 F.3d 496, 501 (2d cir. 1994)). Personal involvement is a question of fact, and thus, summary judgment may only be granted only if there are no issues of material fact in dispute regarding the personal involvement of the defendant. *Id.* (citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

In *Williams*, the Second Circuit cited various ways in which an individual could be "personally involved" in an alleged violation. *Id.*  A defendant is said to have been personally involved if that official directly participated in the infraction. *Id.*  A defendant is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement of the defendant exists if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.*  Finally, the defendant may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

In this case, Dr. Menon has moved for summary judgment, arguing that she played ***no part*** in plaintiff's mental health review or the decision not to give plaintiff any medications, nor did she supervise any of the Herkimer County C.F. employees who screened plaintiff.  She argues that because she had no part in plaintiff's care, she could not have acted with "deliberate indifference."  Dr. Menon's motion for summary judgment is supported by an attorney affidavit of Kevin E. Hulslander, Esq. with exhibits. (Dkt. No. 20-3).

Defendant Menon has also submitted her affidavit. (Dkt. No. 20-9).  Counsel has filed a memorandum of law (Dkt. No. 20-10) and a reply memorandum[4] (Dkt.

---

[4] Defendant Menon has submitted another "reply" in connection with a motion for summary judgment filed by defendant Scudder and Herkimer County Correctional Facility. (Dkt.

No. 28).  The contract between the Herkimer County Mental Health Department, the Herkimer County Sheriff's Department, and Dr. Menon is attached to the Hulslander affidavit as Exhibit D.  The contract states that Dr. Menon will provide psychiatric consultation services as an independent contractor, and that Dr. Menon is not an employee of the County of Herkimer or the Mental Health Department. Def. Ex. D at p.2.

Dr. Menon's affidavit states that she is a licensed practitioner in New York State and is board-certified in adult psychiatry. (Menon Aff. ¶ 3).  She has been actively practicing psychiatry since 1996 and has been associated with the Herkimer County Mental Health Clinic for 20 years. (Menon Aff. ¶ 4).  During that time, she has provided consultation for inmates in the Herkimer County C.F.  According to Dr. Menon, she is fully familiar with the medical and psychiatric care systems for inmates. (Menon Aff. ¶ 4).

Dr. Menon's affidavit outlines a procedure for inmates who require psychiatric care. (Menon Aff. ¶ 6). That procedure is that individuals who request an appointment with a medical specialist are first screened  by the medical department of Herkimer County C.F. *Id.*  The medical department will then initiate a referral if necessary. *Id.*  Inmates who seek psychiatric care must initially seek help from the

---

Nos. 35, (County motion) and Dkt. No. 40)(replying to plaintiff's response Dkt. No. 39).  This court is not considering the County defendants' motion in this Report-Recommendation, however, the court has reviewed defendant Menon's reply to Dkt. No. 39, and it does not change the recommendation in this motion regarding personal involvement.

facility's nurse practitioner. *Id.* If she believes the case to be "overly complicated or serious," she will refer the inmate to the Herkimer County Mental Health Clinic. The director of the Clinic schedules an appointment for the inmate with one of the "counselors," who will evaluate the inmate's needs. At that time, if the inmate needs medication in addition to counseling, Dr. Menon states that an appointment is then made with a psychiatrist. (Menon Aff. ¶ 6).

With reference to the plaintiff, Dr. Menon's affidavit states that plaintiff was "screened" at the Herkimer County C.F. and it was determined that he did not require special psychiatric medication or intervention. (Menon Aff. ¶ 7). Dr. Menon states that plaintiff did write her a letter, but she forwarded the letter to the Director of the clinic and did not provide plaintiff with any medication since ". . . doing so would be against the policy and practice of the correctional facility." *Id.* Dr. Menon states in paragraph 8 of her affidavit:

> I never conducted a psychiatric evaluation, examination or assessment of plaintiff. I am not responsible for the health needs of inmates unless I am scheduled to see an inmate. I did not have an appointment scheduled with plaintiff, nor was a physician-patient relationship ever established between myself and plaintiff.

(Menon Aff. ¶ 8). Dr. Menon states that she did not supervise any nurse practitioners or counselors employed by the Herkimer County C.F. (Menon Aff. ¶ 9). Finally, she states that she had "no duty to the plaintiff" and did not violate any laws, regulations, standards, or procedures in this matter. (Menon Aff. ¶ 10).

Dr. Menon's attorney's affidavit states in paragraph 4 that "she was not involved with plaintiff's medical care either directly or indirectly . . . ."  Her attorney emphasizes that Dr. Menon did not examine or evaluate inmates unless they were scheduled with an appointment to see her.  (Hulslander Aff. ¶ 8).  Attorney Hulslander also asserts that Dr. Menon never conducted a psychiatric evaluation examination or assessment of plaintiff and had "***nothing to do with plaintiff's case at any juncture***." (Hulslander Aff. ¶¶ 11, 13)(emphasis added).

In Dr. Menon's memorandum of law, she argued that plaintiff was screened by employees of the Herkimer County C.F, but Dr. Menon did not have any involvement with "plaintiff's screening, diagnosis or medication at all". (Def. Mem. at 3).  The memorandum also states that since Dr. Menon did not conduct any psychiatric care, ". . . the case was never even considered by Dr. Menon. *Id.*

The same arguments are made in Dr. Menon's second reply memorandum, dated December 1, 2008, with some slightly different statements. (Dkt. No. 40).  However, the second reply memorandum states that Dr. Menon did not become involved in plaintiff's case until ***after*** he complained to the prison. (Dkt. No. 40 at p. 2).  This statement is not clearly explained and is inconsistent with Dr. Menon's other arguments that she was ***never*** involved in plaintiff's case.  This statement implies that at some point, Dr. Menon ***was personally involved*** in plaintiff's care.

In his opposition papers, plaintiff attaches exhibits, some of which are

attached to his complaint. (Dkt. No. 29).  Plaintiff's Exhibit A consists of seven

pages, most of which are responses to plaintiff's facility grievance regarding the

alleged denial of medication.  Plaintiff's inmate grievance or complaint to the

Sheriff's Department is dated May 11, 2007 and is the seventh page of Exhibit A to

Dkt. No. 29.  Plaintiff's inmate complaint form states the following[5]:

> I am being denied medication from mental health for the 2nd time and I
> have mental health history of needing and being on Paxil.  I am
> suffering from depression and anxiety.  This has played a big part in my
> incarceration & is noted on my Parole Violation papers that medication
> is needed.  This is causing severe headaches .  .  .  .  .  .  .  .  .  .  .
> .  .  .  .  .   I need to be placed on medication that helps me from
> suffering from stress, depression and anxiety as soon as possible.   I
> don't need additional problems.

(Dkt. No. 29, Plaintiff's Opposition, Ex. A, P, p.7).

Plaintiff received a prompt reply to his complaint from a coordinator named

Kim Salm on May 11, 2007.  Ms. Salm states in part that:

> You are not being denied medication because you did not have a
> prescription for this medication when you came in.  **Dr. Mennan (sic)
> feels that you also have an alcohol and crack addition, which you
> admitted, and therefore she is not willing to give you this
> medication that you haven't taken or felt the need to take for 2
> years and now want because you are in jail**.  Mike from Mental
> Health explained this to you on Tuesday and also said he would talk to
> the Dr. at the next meeting.  Mental Health does not work for us so it is
> up to Dr. Mennan (sic) what to do with your case.

(Dkt. No. 29, Plaintiff's Opposition, Ex. A, p.6) (emphasis added).

Two other exhibits attached to plaintiff's opposition also refer to Dr. Menon

---

[5]The court has corrected several spelling errors in the quoted language.

and her involvement and/or review of plaintiff's case.  The first memorandum is

from Lt. J. Coddington to the plaintiff and is dated May 16, 2007.  In paragraph 2 of

the memorandum Lt. Coddington states "you have been seen by Herkimer County

Mental Health staff and ***your case was reviewed by Dr. Mennon (sic) from Mental***

***Health".***  (Dkt. No. 29, Ex. A, p. 4).  The other exhibit is a supervisor's handwritten

decision of inmate complaint and appears to be dated May 14, 2007.  The

handwriting appears to state in part that "***you have seen Dr. Menon*** and Mike

LaPorte . . . their decisions . . . have nothing to do with us."  (Dkt. No. 29, Ex. A, p.

5) (emphasis added).

There are, therefore, statements by employees of the Herkimer County

Sheriff's Office that appear to show some personal involvement by Dr. Menon in a

review of plaintiff's health record or mental health record and reference to a decision

by Dr. Menon about whether plaintiff should be receiving medication because of his

"alcohol and crack addiction".  These exhibits contradict Dr. Menon's arguments

that she had "nothing to do with plaintiff's case at any juncture".

The documents submitted by plaintiff and written by Sheriff's employees

appear to show that Dr. Menon ***did*** do some type of evaluation and/or assessment of

plaintiff's medical record and may have consulted with Herkimer County Mental

Health employees to deny plaintiff medication when he first arrived at the Herkimer

County C.F.  The extent of her personal involvement is also a question.[6]  Dr. Menon argues that she did not violate plaintiff's constitutional rights because she was not personally involved, and **therefore** could not have formed the requisite intent.  She does not argue that plaintiff was given constitutionally adequate care.  She only argues that she had no involvement in the care that he was given. There is **no** argument by Dr. Menon on the merits of the plaintiff's claim that he was denied constitutionally adequate medical care.  This court finds that because there are genuine issues of material fact in dispute about Dr. Menon's personal involvement, Dr. Menon's motion must be denied.

**WHEREFORE** it is hereby

**RECOMMENDED**, that defendant Menon's motion for summary judgment (Dkt. No. 20) be **DENIED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of*

---

[6] Other individuals indicate that Dr. Menon was personally involved, and other individuals have interpreted what Dr. Menon did, thus, there is still a question as to whether Dr. Menon considered and rejected plaintiff's request for medication, and if so why the medication was refused.

*Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Date: March 5, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge