UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY W. HANRAHAN, JR.,

                              Plaintiff,

                                                        9:07-CV-610

          vs.

DR. MENON, et al.

                              Defendants.

_____

TIMOTHY HANRAHAN, JR., Plaintiff *Pro Se*
KEVIN E. HULSLANDER, ESQ. & MICHELLE M. DAVOLI, ESQ.,
     for Deft. Menon
THOMAS K. MURPHY, ESQ., for Defts. Scudder, Herkimer County Correctional
     Facility, McGrail, Urtz, & Farber

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the

Honorable Frederick J. Scullin, Jr., Senior, United States District Judge, pursuant to

28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

     In this civil rights action, plaintiff claims that, while he was an inmate in the

Herkimer County Correctional Facility[1] ("HCCF"), proper treatment of his purported

depression, anxiety, and panic attacks was unconstitutionally denied and/or delayed

by the defendants.  (Amended Complaint (hereinafter "AC"), Dkt. No. 59).  Liberally

_____

[1] Plaintiff is currently an inmate in the custody of the New York State Department of
Correctional Services.

construed, the *pro se* amended complaint alleges that two medical professionals associated with "Herkimer County Mental Health," two employees of HCCF, and the County Sheriff,[2] were deliberately indifferent to plaintiff's serious medical needs, in violation of the Fourteenth Amendment and the "Patients Bill of Rights."  Plaintiff also claims that Dr. Anandavalli Menon, a private psychiatrist with a consulting contract with the Herkimer County Mental Health Department ("HCMHD"), breached her contractual obligations to plaintiff by refusing to examine or treat him.

Presently before the court are two dispositive motions–a summary judgment motion filed on behalf of Dr. Menon (Dkt. No. 87), and a motion to dismiss or for summary judgment brought by the other defendants (Dkt. No. 88).  *Pro se* plaintiff Timothy Hanrahan opposes both motion.  (Dkt. Nos. 92-94).  Defendant Menon has filed a reply. (Dkt. No. 95).  This court will recommend that summary judgment be entered in favor of all defendants and that plaintiff's amended complaint be dismissed in its entirety.  Even viewing the record in the light most favorable to the plaintiff, no reasonable fact finder would conclude that his medical treatment was constitutionally inadequate.  Plaintiff's other claims, based on the Patients Bill of

---

[2] The amended complaint designates Herkimer County Sheriff Christopher Farber as the "municipal policymaker" for HCCF.  It appears that the plaintiff is alleging municipal liability by suing the Sheriff, in his official capacity.  Although the Herkimer County Correctional Facility was docketed as a defendant, as an agency of Herkimer County, it is not an appropriate defendant.  *See Miles v. Albany Correctional Facility*, 9:09-CV-1279 (LEK/ATB), 2010 WL 3946956, at *1 (N.D.N.Y. Sept. 16, 2010) (claim against a county jail under § 1983 should be dismissed because a sub-division of a local government is not subject to suit under New York law) (Report-Recommendation), adopted, 2010 WL 3940956 (Oct. 6, 2010).

Rights and an alleged breach of contract by Dr. Menon, do not state viable causes of action under 42 U.S.C. § 1983.

## I.     Facts

This action relates to plaintiff's incarceration at the HCCF between April 12, 2007 and July 20, 2007,[3] although some of his prior history is relevant.  Plaintiff was previously confined in HCCF for less than three months, in the spring of 2005. During part of that prior period of incarceration, plaintiff complained of panic attacks and depression and was treated with Paxil.[4]  (AC, Ex. A, Dkt. No. 59 at 12-17).  After leaving HCCF in May 2005, plaintiff began a period in the custody of New York State, during which time he was not treated with Paxil, apparently because such medication was not allowed for inmates in the shock camp and early work release programs in which plaintiff participated.  (Pltf.'s 6/15/2010 Dep. at 20-26, Dkt. No. 87-14).[5]  In December 2006, plaintiff was released to New York State Parole supervision.  (AC, Facts ¶ 4).  He did not seek medication for any mental health issues following his release, purportedly because his job did not offer medical

---

[3] Plaintiff was sent to the Oneida County Correctional Facility on July 20, 2007, and was returned to HCCF on August 1, 2007 to be released.  (Pltf.'s Statement under Local Rule 7.1, ¶ 1, Dkt. No. 93 at 21).

[4] Paxil is a drug generally prescribed to address depression, social anxiety disorder, and panic disorder.  *Smith v. Wurzberger*, 9:05-CV-0968 (GLS/DEP), 2008 WL 2157127, at *1 (N.D.N.Y. Mar. 27, 2008) (Report-Recommendation), adopted, 2008 WL 2157126 (May 20, 2008).

[5] Plaintiff claims that he complained of mental health symptoms while in state custody and sought medication, but was refused.  (AC, Facts ¶ 3; Pltf.'s Dep. at 21-22, 24-25, 32-33).

insurance.  (Pltf.'s Dep. at 30-32).  Plaintiff, was re-arrested in the spring of 2007 for

assault, following a fight with his girlfriend, and was held in the HCCF starting on

April 12, 2007.  (AC, Facts ¶ 4).  Plaintiff claims that his arrest, and the eventual

revocation of his parole, resulted from his untreated mental health problems.  (AC,

Facts ¶ 4; Ex. C to Pltf.'s Responses, Dkt. No. 94 at 17).

Plaintiff alleges that "within days" after entering the HCCF, he requested an

examination by personnel from the Herkimer County Mental Health Department to

address his depression, anxiety, and panic attacks.  (AC, Facts ¶ 1).  On April 13,

2007, a correction officer at HCCF referred plaintiff for a mental health evaluation.

(Ex. E to Pltf.'s Responses, Dkt. No. 94 at 35).  At that time, the HCMHD provided

mental health services to inmates at HCCF on an as-needed basis.  (Menon Aff. ¶ 3,

Dkt. No. 87-28 at 2).  On April 17, 2007, Michael LaPorte (not a named defendant),

a Credentialed Alcohol and Substance Abuse Counselor employed by HCMHD,

performed a mental health screening examination of the plaintiff.  (Ex. E to Pltf.'s

Responses, Dkt. No. 94 at 37-38; LaPorte 6/25/10 Dep. at 6, 12-13, Dkt. No. 87-16).

LaPorte typically saw patients who had both addiction and mental health issues.

(LaPorte Dep. at 7).  The plaintiff had an admitted history of alcohol and substance

abuse, but claimed to have been sober from March 2005 until he relapsed in

connection with the incident that led to his arrest on April 12, 2007.  (Ex. E to Pltf.'s

Responses, Dkt. No. 94 at 37-38; Ex. C, Dkt. No. 94 at 16-17; Pltf.'s Dep. at 38).

During the mental health screening on April 17th, plaintiff complained of depression, anxiety, and difficulty sleeping, but denied any suicidal thoughts. (Ex. E to Pltf.'s Responses, Dkt. No. 94 at 37-38). Plaintiff asked Mr. LaPorte to treat him with Paxil, noting that his previous experience with that medication had been helpful in evening out his moods. (*Id.*). Mr. LaPorte concluded that plaintiff's condition was not an emergency and later reviewed his case with the other two members of the HCMHD mental health staff–defendant Scudder and Chet Cieloscyk. (LaPorte Dep. at 13-14). The staff concluded that plaintiff's primary issue was alcoholism, and determined that he was not in need of mental health services. However, Mr. LaPorte stated his intention to check on plaintiff during his next visit to the HCCF on April 24, 2007. (Ex. E to Pltf.'s Responses, Dkt. No. 94 at 38). On April 27th, HCMHD closed its file on plaintiff, concluding that no further mental health service were recommended. (*Id.*, Dkt. No. 94 at 36, 38; LaPorte Dep. at 14-15).

On or about May 2, 2007, plaintiff again requested that the HCCF medical staff make a mental health referral, although he continued to deny any thoughts of self-harm. (Ex. E to Pltf.'s Responses, Dkt. No. 94 at 41). On May 8th, Mr. LaPorte again met with the plaintiff, who renewed his complaints of anxiety/depression and his request to be treated with Paxil. (*Id.* at 40). Mr. LaPorte advised the plaintiff that the staff psychiatrist was not willing to prescribe the medication due to plaintiff's history of alcoholism and addition. (*Id.*; LaPorte Dep. at 15-17). During

his deposition in June 2010, Mr. LaPorte stated that he did not believe that he actually consulted with Dr. Menon, the psychiatrist who provided services to HCMHD on request.  Rather, Mr. LaPorte testified that his statement to plaintiff reflected his belief that Dr. Menon would not have prescribed Paxil under the circumstances.  (LaPorte Dep. at 16-17).  Mr. LaPorte did consult with the other two employees of HCMHD–Mr. Scudder and Mr. Cieloscyk–in affirming his conclusion that the plaintiff was not suffering from a major mental illness that required medication.  (Ex. E to Pltf.'s Responses, Dkt. No. 94 at 40; LaPorte Dep. at 17-18).

On May 11, 2007, plaintiff filed a grievance with the Herkimer County Sheriff's Office, complaining that HCMHD had twice denied him medication to address his depression and anxiety.  The plaintiff noted that he "had a mental health history of needing and being on Paxil."  (Ex. D to Pltf.'s Responses, Dkt. No. 94 at 26).  The grievance was referred to the HCCF medical staff, who responded that they were not responsible for the treatment decision of HCMHD.  (*Id*. at 25).  The grievance was subsequently reviewed by Lt. Coddington of HCCF, who upheld the denial of plaintiff's grievance because, *inter alia*, (a) plaintiff had been seen both by HCMHD and the facility medical staff, who determined not to prescribe the requested medication; (b) plaintiff had no prescription for the medication or documentation from a doctor as to his need for the medication; and (c) plaintiff admitted that the New York State Department of Correctional Services ("DOCS")

had taken plaintiff off of Paxil while he was in their custody.  (*Id.* at 24).  On May

17, 2007, defendant McGrail, a Captain and the jail administrator at HCCF, also

affirmed the denial of plaintiff's grievance.  Capt. McGrail relied on the reasons

stated by Lt. Coddington, and noted that both the facility medical department and

HCMHD did not see the need to prescribe the medication to plaintiff.  (*Id.* at 23).

Ultimately, the State Commission of Correction upheld the denial of plaintiff's

grievance.  (*Id.* at 19-22).

Between May 18 and 24, 2007, plaintiff complained to the HCCF medical

staff of panic attacks, with symptoms including headaches and heart palpitations.  On

May 24, 2007, Nurse Practitioner Charlene Macri of the HCCF, who is licensed to

prescribe medications, ordered Vistaril[6] to treat plaintiff's alleged symptoms.  (Ex. E

to Pltf.'s Responses, Dkt. No. 94 at 41, 45-46; Urtz Aff. ¶ 6, Dkt. No. 88-4).  On

June 4, 2007, plaintiff complained that the Vistaril was not completely effective in

treating his anxiety and panic, although he continued to deny thoughts of self-harm.

After the medical staff reviewed plaintiff's medical records from HCCF from 2005,

when he was prescribed Paxil, Charlene Macri changed plaintiff's medication to

Paxil.  (*Id.*).  When plaintiff was released from HCCF on August 1, 2007, he was

given a prescription for Paxil and advised to follow up with a doctor promptly.  (Urtz

---

[6] Vistaril is a brand-name of hydroxyzine–an antihistamine and sedative prescribed, *inter alia*, to treat anxiety, tension, and agitation caused by emotional stress.  *See, e.g.*, http://www.medicinenet.com/hydroxyzine/article.htm; http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682866.html.

Aff. ¶ 8; Ex. E to Pltf.'s Responses, Dkt. No. 94 at 42-43).

The amended complaint alleges that Registered Nurse Shannon Urtz gave plaintiff anti-psychotic medications, that she was not qualified to prescribe.  Plaintiff further complains that he was denied the appropriate advice and follow-up from a qualified psychiatrist relating to such medications.  (AC, Amended Facts ¶ 8). However, as plaintiff subsequently acknowledged, the medications were prescribed by a Nurse Practitioner licensed to do so, and were only administered to him by Nurse Urtz at the direction of the prescribing professional.  (Urtz Aff. ¶ 6; Urtz 6/25/2010 Dep. at 13-15, Dkt. No. 87-17; Pltf.'s Dep. at 47-50).[7]

Plaintiff claims that Dr. Menon refused to see or treat him, with deliberate indifference to his serious psychiatric problems, and in breach of her contractual obligations.  Dr. Menon had a contractual relationship with HCMHD, by which she agreed to provide psychiatric consultation services "as needed" by the HCMHD. (Ex. H to Pltf.'s Responses, Dkt. No. 94 at 75-77).  She did not have a direct contractual relationship with HCCF, but was regularly requested by HCMHD to consult regarding inmates at HCCF.  (Menon Aff. ¶¶ 3-4).  Dr. Menon insisted that, unless an appointment with her was set up for her after a screening interview and evaluation of an inmate by the employees of HCMHD, she would not get involved in

---

[7] Plaintiff claims that Nurse Urtz advised him that she had to "pull strings" to get him medication, which she denied ever saying.  (Pltf.'s Dep. at 47-50; Urtz Dep. at 16).  This factual issue is not material to the court's resolution of the viability of plaintiff's action.

the psychiatric care of a person confined at HCCF.  She did not supervise the staff at either HCCF or HCMHD, and was not involved in the initial mental health screening of inmates by the employees of HCMHD.  (Menon Aff. ¶¶ 5-7).

Dr. Menon states that HCMHD never asked her to see the plaintiff, and that she played no role in his treatment.  She never examined the plaintiff and had no input in the medical judgments of the staff at HCCF and HCMHD with respect to him.  (Menon Aff. ¶¶ 9-11).  Although there were several records relating to plaintiff's grievance which suggested that Dr. Menon was consulted with respect to his psychiatric care (Ex. D to Pltf.'s Responses, Dkt. No. 94 at 24, 25, 31), they all appear to rely on the suggestion in Michael LaPorte's May 8, 2007 Mental Health Interview Sheet that the "staff psychiatrist" was not willing to prescribe Paxil to the plaintiff (Ex. E, Dkt. No. 94 at 40).  As noted above, Mr. LaPorte has since testified that he did not actually confer with Dr. Menon about plaintiff, and the others who assumed that Dr. Menon was consulted now state they had no personal knowledge of any such consultation.  (Davoli Aff. ¶¶ 22, 24-25, 29-35, Dkt. No. 87-4 at 7-12).

Plaintiff now acknowledges that he never met or spoke with Dr. Menon because the screeners at HCMHD never set up an appointment with her.  (Pltf.'s Dep. at 63-64).  However, plaintiff alleges that Dr. Menon demonstrated her deliberate indifference to his medical needs by ignoring a letter he wrote to her on May 17, 2007 requesting psychiatric treatment and medication.  (AC, First Cause of

Action; Ex. D to Pltf.'s Responses, Dkt. No. 94 at 28-29).  Dr. Menon acknowledges

receiving the letter from plaintiff, but states that she forwarded it to defendant

Scudder, the supervisor of the HCMHD, because she had not been requested by

HCMHD to become involved in plaintiff's care.  (Menon Aff. ¶ 10).  Dr. Menon

contends that she had no duty to provide treatment to plaintiff, or any inmate at

HCCF, under her contract with HCMHD, unless and until the Mental Health

Department requested that she consult on a particular case.  (Menon Aff. ¶¶ 12-14).

Mr. Scudder responded to plaintiff's letter to Dr. Menon, advising him that

HCMHD had determined that plaintiff did not require psychiatric consultation, and

that his needs could be met through the medical staff at HCCF.  Mr. Scudder also

told plaintiff that he could continue to meet with the HCMHD staff during their

regular visits to HCCF.  (Ex. D to Pltf.'s Responses, Dkt. No. 94 at 30).

## II.    Procedural History

Plaintiff's original complaint named only defendants Menon, Scudder, and

HCCF.  (Dkt. No. 1).  On March 11, 2008, defendant Menon filed a prior motion for

summary judgment, arguing only that she was not personally involved in plaintiff's

care.  (Dkt. No. 20).  By Report-Recommendation filed on March 5, 2009,

Magistrate Judge Di Bianco[8] recommended that Senior District Judge Scullin deny

defendant Menon's motion without prejudice because, based on the factual record at

---

[8] This case was re-assigned to me on January 4, 2010, following Judge Di Bianco's
retirement.  (Dkt. No. 57).

that time, "there [were] genuine issues of material fact in dispute about Dr. Menon's personal involvement" in making decisions regarding plaintiff's care.  (Dkt. No. 42 at 12).  Defendant Menon objected to that recommendation, and plaintiff "opposed" that objection.  (Dkt. Nos. 44, 47).

  On September 9, 2008, defendants Scudder and HCCF filed a prior motion for summary judgment or to dismiss.  (Dkt. No. 35).  On May 4, 2009, plaintiff moved to amend his complaint, adding defendants McGrail, Urtz, and Faber.  (Dkt. No. 48).  By Report-Recommendation filed on September 29, 2009, Magistrate Judge Di Bianco recommended that Judge Scullin deny the summary judgment motion without prejudice, pending the District Court's decision regarding plaintiff's motion to amend his complaint.  (Dkt. No. 52).  The parties did not object to the September 29, 2009 Report-Recommendation; and, in an Order filed on October 27, 2009, Judge Scullin denied the summary judgment motion of defendants Scudder and HCCF without prejudice, as recommended by Judge Di Bianco.  (Dkt. No. 56).

  By Memorandum-Decision and Order dated January 21, 2010, Judge Scullin granted plaintiff's motion to amend his complaint.  (Dkt. No. 58).  On March 15, 2010, Judge Scullin ruled that Dr. Menon's prior motion for summary judgment was moot in light of the amendment of plaintiff's complaint, and he remanded the case to this court for all further pretrial matters.  (Dkt. No. 67).  This court ordered that, if the defendants intended to renew or expand their dispositive motions, they do so by

May 15, 2010, which deadline was extended until August 26, 2010 after the parties

stated they needed to pursue additional discovery.  (Dkt. Nos. 68, 70).  Thereafter, all

defendants timely filed the dispositive motions which are now before this court.

### III.   Summary Judgment[9]

Summary judgment may be granted when the moving party carries its burden

of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56[10];

*Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).

Ambiguities or inferences to be drawn from the facts must be viewed in the light

most favorable to the party opposing the summary judgment motion.  *Id*.  However,

when the moving party has met its burden, the nonmoving party must do more than

"simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86

(1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial

responsibility of informing the court of the basis for the motion and identifying the

portions of "'the pleadings, depositions, answers to interrogatories, and admissions

---

[9] The motion of the defendants other than Dr. Menon was styled as a motion to dismiss and/or for summary judgment.  Given the extensive evidentiary material submitted by all parties in connection with the instant motions, this court will apply the standards for summary judgment.

[10] Rule 56 was extensively amended, effective December 1, 2010.  As the Advisory Committee Notes indicate, "the standard for granting summary judgment remains unchanged."  The revised rule explicitly adopts procedures relating to summary judgment motions "consistent with those already used in many courts."

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56 (c)(1)(A).  Where the nonmovant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the nonmovant's claims or (2) identifying those portions of the nonmovant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 323);  FED. R. CIV. P. 56 (c)(1).  The second method requires the movant to identify evidentiary insufficiency, not merely to deny the opponent's pleadings.  *Id.*

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Id.*  "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

13

## IV.   Inadequate Medical Care

### A.   Legal Standards

Deliberate indifference to a convicted prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The Eighth Amendment's proscription on cruel and unusual punishment does not apply to pretrial detainees, whose right to medical care must instead be analyzed under the Due Process Clause of the Fourteenth Amendment. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  However, the standards applied to assess the adequacy of medical care provided to pretrial detainees under the Due Process Clause are the same as those applied to convicted prisoners under the Eight Amendment.  *Id. at* 69, 70-72; *Mayo v. County of Albany*, 357 Fed. Appx. 339, 341(2d Cir. 2009).[11]

There are two elements to the deliberate indifference standard.  *Smith v.*

---

[11] Plaintiff's complaint suggests a vague equal protection cause of action arising from the alleged deficiencies in his medical care.  However, the complaint provides no clue as to how plaintiff believes he was treated differently than other similarly situated individuals.  This court concludes that any equal protection claim is mis-pled and essentially duplicates plaintiff's due process claim that the defendants were deliberately indifferent to his medical needs. *See, e.g. Hardy v. Diaz*, 9:08-CV-1352 (GLS/ATB), 2010 WL 1633379, at *8 (N.D.N.Y. Mar. 30, 2010) (vague and duplicative equal protection claim based on delays in treatment for Hepatis C virus treated as part of Eighth Amendment deliberate indifference claim) (Report-Recommendation), adopted, 2010 WL 1633390 (N.D.N.Y. Apr. 21, 2010); *Toney v. Goord*, 04-CV-1174 (TJM/ RFT), 2006 WL 2496859 at *10-11 (N.D.N.Y. Aug. 28, 2006) (equal protection claim that prison doctor refused to treat inmate "drug addict" while he was in segregated housing as a result of his illegal use of narcotics would be addressed as an Eighth Amendment medical care claim).

*Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.*

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'  *Bellotto v. County of Orange*, 248 Fed. Appx. 232, 236 (2d Cir. 2007) (quoting  *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).  If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious."  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).  When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone."  *Id*. at 185.   The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain.  *Bellotto v. County of Orange*, 248 Fed. Appx. at 236 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) and *Smith v. Carpenter*, 316 F.3d at 187 (actual medical consequences are

highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose  of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference.  *Id*. at 835, 837.

A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 703.  Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)).  Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 835.  Thus, any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983.  *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (1992) (table).

## B.    Application

While there may be an issue of fact as to whether plaintiff suffered from a "serious medical condition," the alleged delays and other deficiencies in his medical treatment did not constitute a "serious deprivation" of care.  Moreover, no reasonable jury could find that either the named defendants, or anyone else associated with HCCF or HCMHD, acted with deliberate indifference to plaintiff's medical needs. Accordingly, this court recommends that defendants' motions for summary judgment with respect to plaintiff's claim of constitutionally inadequate medical care be granted.

### 1.    The Seriousness of the Alleged Deprivation of Medical Care

Defendants Scudder, McGrail, Urtz, and Farber argue that the plaintiff did not suffer from a "serious" medical condition while confined in the HCCF in 2007, and cannot meet the objective prong of the applicable standards to establish a due process violation.  (Defs.' Memo. of Law at 4, Dkt. No. 88-10 at 8).  The evidence available to the medical staffs at HCCF and HCMHD in 2007 did not provide much objective support for plaintiff's claims that he had serious mental health issues. However, in opposing the instant motions, plaintiff presented some evidence that his depression resulted in several suicide attempts, before and after his incarceration at HCCF.  Moreover, plaintiff claimed to suffer anxiety attacks with tangible physical symptoms, and the medical staff at HCCF responded, both in 2005 and in 2007, by

17

treating plaintiff with Paxil–a medication typically used to treat depression and anxiety/panic disorder.  While it is a close question, plaintiff has at least created an issue of material fact with respect to whether he was suffering from a serious medical condition during the relevant time period.  *See, e.g., Zimmerman v. Burge*, 9:06-CV-0176 (GLS/GHL), 2009 WL 3111429, at *7-8 (N.D.N.Y. Sept. 24, 2009) (collecting cases suggesting that depression, when combined with suicide attempts or severe anxiety attacks, constitutes a serious medical condition).

The court notes, however, that plaintiff eventually received requested medication at HCCF, and his due process claim is based on allegations that his mental health care was unreasonably delayed and, apparently, that he was also prescribed an inappropriate medication.  Hence, the relevant question in evaluating whether plaintiff has satisfied the objective prong of the test for constitutionally inadequate medical care, is whether the delays in treatment, or an inappropriate choice of medications resulted in a serious deprivation of his medical care.  *Smith v. Carpenter*, 316 F.3d at 185.

The plaintiff alleged in the complaint that, during the delay in his treatment, he suffered from "feeling low"; sleep problems; and periodic panic attacks that involved dizziness, chest pains, and difficulty breathing.  (AC, Amended Facts ¶ 6).  As noted above, he repeatedly denied any thoughts of self-harm while at HCCF.  These symptoms were primarily subjective, and do not rise to the level that would make the

two-month delay in plaintiff's medication a serious deprivation.  *See, e.g., Brown v. White*, 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *9-10 (N.D.N.Y. Mar. 15, 2010) (inmate who suffered from chronic, but not acute, lower back pain and occasional headaches and dizziness during a three-month delay in requested medication and other treatment did not suffer a serious deprivation of medical care); *Evans v. Manos*, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (subjective claims of "serious pain," unaccompanied by substantial medical complications are not sufficient to create a factual issue as to whether he was suffering from a "serious," unmet medical need).  Moreover, it is noteworthy that the plaintiff managed similar symptoms for almost two years without medication before he entered the HCCF in 2007, during which time he completed "shock camp" in the New York State prison system and a significant period of post-release employment.  (Pltf.'s Dep. at 24-26, 29-33).

The plaintiff has not provided any evidence to suggest that the delays in his medication at HCCF, or the choice of medication eventually prescribed, resulted in a deterioration of his mental health that would support a claim that he suffered a serious deprivation of care.[12]  In his deposition and responses to the pending

---

[12] The Second Circuit has not resolved whether actual adverse medical effects are required, as a threshold matter, to state a viable Eight Amendment claim relating to delayed medical care; but has indicated that a plaintiff must at least show that the delay significantly increased the risk for medical injury or similar serious adverse consequences.  *Smith v. Carpenter*, 316 F.3d at 188-89, n.14 & n.15.

motions, plaintiff may be belatedly suggesting that his January 29, 2008 arrest for

burglary and criminal mischief, which purportedly involved a suicide attempt and

which was followed by a period of mental health treatment, was the result of the

alleged deprivation of care at HCCF, which ended in August 2007.  (Exs. F & G to

Pltf.'s Responses, Dkt. No. 94 at 50-73; Pltf.'s Dep. at 58-60).  However, it is clear

from the relevant records that plaintiff's criminal acts occurred almost six months

after his release from HCCF, and immediately followed the attempts, by another

doctor, to change plaintiff's medication from Paxil, which was prescribed at HCCF,

to Zoloft.  (Ex. F, Dkt. No. 94 at 54; Pltf.'s Dep. at 59-60).  Given that plaintiff

purportedly tried to commit suicide both well before and well after his incarcerations

at HCCF, but never expressed any thoughts of self harm while confined at HCCF,

there is no factual support in the record for plaintiff's suggestion that the alleged

deprivations set forth in his complaint caused any deterioration in his mental health.

*See, e.g., Atkins v. County of Orange*, 372 F. Supp. 2d 377, 413 (S.D.N.Y. 2005)

(plaintiff Grassfield's two suicide attempts while in custody were not the result of

allegedly substandard care, as Grassfield made numerous suicide attempts before and

after his incarceration while under psychiatric care and on psycho tropic drugs),

*aff'd, Bellotto v. County of Orange*, 248 Fed. Appx. 232 (2d Cir. 2007).

        In sum, this court concludes that any delays in or other issues involving

plaintiff's mental health treatment at HCCF did not result in a "serious" deprivation

of medical care under the objective prong of the applicable legal standards.  In any event, as discussed below, the court also finds that summary judgment should also be granted in favor of all defendants because no reasonable jury could conclude that they were deliberately indifferent to plaintiff's medical needs, under the subjective part of the relevant test.

### 2.    Deliberate Indifference

All defendants argue that plaintiff's claim of constitutionally inadequate medical care must fail, because no one associated with HCCF or HCMHD was deliberately indifferent to his medical condition or needs.  This court agrees that there are no material facts in the record which indicate that the defendants knowingly disregarded a substantial risk of serious harm to plaintiff as a result of his mental health issues.

### a.    Defendant Scudder and the HCMHD Staff

In the amended complaint, plaintiff describes the symptoms of his depression, anxiety, and panic attacks.  He claimed that he sometimes awoke out of a "dead sleep" unable to breath with chest pains.  Plaintiff alleges that he suffered bouts of dizziness and experienced rashes on his body.  He also complained of having unexplained outbreaks of anger and abnormal thoughts.  (AC, Amended Facts ¶ 6). In his responses to the defendants' motions, plaintiff claims that he made several suicide attempts, well before and shortly after he was released from HCCF.  (Pltf.'s

Memo. of Law, Dkt. No. 93 at 9-10).

As outlined above, plaintiff's descriptions of his symptoms to the medical staff at HCCF and HCMHD were conclusory and significantly less dramatic, and plaintiff repeatedly denied any suicidal thoughts or tendencies.  Moreover, when plaintiff entered HCCF in April 2007, he had no prescription for any medication; he had also gone almost two years without any medication following the period of a few months in 2005 when he was treated with Paxil during his prior confinement at HCCF. Plaintiff admitted an extensive history of alcohol and substance abuse and his parole violation in 2007 resulted from an incident in which alcohol intoxication played a substantial role.  (Ex. C to Pltf.'s Responses, Dkt. No. 94 at 16-17).  The conclusion of the mental health staff at HCMHD that plaintiff's primary health issue was substance abuse, and that he was not suffering from a major mental illness that required medication, clearly did not reflect deliberate indifference to a serious medical need.[13]  Although the HCMHD staff concluded that plaintiff did not require their services, they evaluated him twice, advised him that his needs could be met through the medical staff at HCCF, and offered to continue to see him during their

---

[13] The mere fact that the HCCF may have previously provided plaintiff with Paxil in 2005 does not mean that the HCMHD staff was deliberately indifferent when they made the medical judgment that Paxil was not appropriate in 2007. *See, e.g., Smith v. Woods*, 9:05-CV-1439 (LEK/DEP), 2008 WL 788573 at *2, *8 (N.D.N.Y. March 20, 2008) (doctor's decision to prescribe Prozac to treat plaintiff's impulse control disorder was not an Eighth Amendment violation even though doctors in other institutions had provided Seroquel); *Brown v. White*, 2010 WL 985184, at *2 n.3, *11 (medical staff's refusal to prescribe Percocet to treat inmate's back pain was not deliberate indifference even though he had been given similarly potent pain killers at other prisons).

regularly scheduled visits to the jail.  (Ex. D to Pltf.'s Responses, Dkt. No. 94 at 30).

Plaintiff clearly disagreed with the diagnosis of his condition by the HCMHD staff (defendant Scudder, Mr. LaPorte, and Mr. Cieloscyk), and might conceivably claim that they were negligent in not delving more deeply into his symptoms and his purported, prior suicide attempts.  However, mere disagreement with the judgment of medical professionals, or even claims of medical malpractice, do not rise to the level of deliberate indifference.  *See, e.g.*, *Ross v. Kelly*, 784 F. Supp. at 44-45 (a prisoner does not have the right to the treatment of his choice); *Kellam v. Hunt*, 9:04-CV-1225 (LEK/GJD), 2007 WL 2764814, at *6 (N.D.N.Y. Sept. 20, 2007) (disagreements over medications, diagnostic techniques, forms of treatment, and the timing of their intervention implicate medical judgments and not the constitutional standards for medical care).

## b.    Defendant Menon

Dr. Menon has consistently maintained that she was never asked by HCMHD to consult on plaintiff's case, and that she played no role in his treatment.  Although there was some documentation to suggest that Dr. Menon was involved in the decision initially to deny plaintiff's medication, she submitted extensive affidavits to explain those documents and confirm that she had nothing to do with that decision.  Plaintiff has offered nothing to contradict Dr. Menon's factual position regarding her lack of involvement in his care.  *See Tafari v. Stein*, 01CV0841, 2009 WL 331378, at

*1, 8 (W.D.N.Y. Feb. 11, 2009) (where the record did not reflect any treatment of inmate by Dr. Galindo and the plaintiff offered no evidence to the contrary, there is no factual basis upon which a trier of fact could conclude that Dr. Galindo was deliberately indifferent to the plaintiff's medical needs).

Plaintiff's only remaining basis for claiming that Dr. Menon was deliberately indifferent to his medical needs was the fact that she ignored a letter he wrote to her requesting treatment and medication.  (Ex. D to Pltf.'s Responses, Dkt. No. 94 at 28-29).  Given that Dr. Menon was never consulted regarding plaintiff's case pursuant to her contract with HCMHD, she appropriately referred plaintiff's letter to defendant Scudder, who supervised that agency (which provided mental health treatment to inmates, as requested by HCCF).  *See, e.g.,Wright v. Genovese,* 694 F. Supp. 2d 137, 156 (N.D.N.Y. 2010) (private surgeon who previously operated on a state prisoner, but had no control over if and when DOCS might refer plaintiff to him for follow-up care, could not be liable under Section 1983 for deliberate indifference by failing to respond to the inmate's letter requesting further medical treatment) (citing*, inter alia, Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) ("A doctor associated with a prison cannot be held responsible for failing to intercede in the treatment of a prisoner simply because the prisoner button-holes him and insists that he do so. . . . [The prison psychiatrist's] refusal to intervene in the medical treatment of another doctor's patient simply because the patient demanded it was objectively

reasonable as a matter of law.")) *See also Goris v. Breslin*, 10-0491-pr, 2010 WL 4840482, at *1 (2d Cir. Nov. 30, 2010) (DOCS Medical director was not sufficiently involved in alleged deprivation of adequate medical care by virtue of the fact that he received two letters from plaintiff and delegated them to a subordinate for response) (citing *Sealely v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).

### c. The HCCF Medical Staff and Defendant Urtz

The medical staff at HCCF saw plaintiff at least four times between mid-May and early June 2007, and prescribed Vistaril, and, eventually, Paxil, to address his continuing complaints of depression and anxiety.  (Ex. E to Pltf.'s Responses, Dkt. No. 94 at 41, 45-47).  Given plaintiff's repeated denials of any thoughts of self-harm, and the paucity of objective evidence of physical symptoms, the HCCF and HCMHD medical staff gave plaintiff appropriate attention and certainly did not act with deliberate indifference in connection with the manner and timing of his treatment. *See, e.g.*, *Zimmerman v. Burge*, 2009 WL 3111429, at *8 (where plaintiff was seen by mental health providers once per month and was prescribed an anti-depressant, prison officials were not deliberately indifferent by declining to assign him to the Intermediate Care Program, which provided more intensive mental health treatment); *Covington v. Westchester County Dept. of Corrections*, 06 Civ. 5369, 2010 WL 572125, at *6 (S.D.N.Y. Jan. 25, 2010) (given the mental health care provided to plaintiff, the medical staff was not deliberately indifferent in refusing his repeated

requests for different or increased medication and additional counseling sessions).

Plaintiff suggests that Nurse Shannon Urtz was deliberately indifferent to his medical needs by administering inappropriate medication (even though he specifically requested Paxil) without appropriate disclosure and follow up.  (AC, Third Cause of Action).  Defendant Urtz, a nurse who could not prescribe medication, cannot be held liable, under a deliberate indifference standard, for administering medication pursuant to the direction of the supervising medical provider–Nurse Practitioner Charlene Macri, who is not named as a defendant.  *See, e.g., Gillespie v. New York State Dept. of Correctional Services*, 9:08-CV-1339 (TJM/ATB), 2010 WL 1006634, at *6 & n. 11 (N.D.N.Y. Feb. 22, 2010) (Nurse-Administrator who deferred to or confirmed the treatment decisions of the primary doctor was not deliberately indifferent) (Report-Recommendation), adopted, 2010 WL 1006643 (N.D.N.Y. Mar. 19, 2010) (citing *Smith v. Woods*, 9:05-CV-1439 (LEK/DEP), 2008 WL 788573 at *9 (N.D.N.Y. Mar. 20, 2008) (social worker and psychologist in prison had no authority to override the decision of the treating psychiatrist regarding appropriate medication for an inmate/patient; further, they had no reason to know that the psychiatrist was not appropriately treating the plaintiff)). In any event, even if someone on the HCCF medical staff committed malpractice in connection with the prescribing or administration of medication to plaintiff, this would not constitute deliberate indifference.  *See, e.g., Williams v. M.C.C.*

*Institution*, 97 CIV. 5352, 1999 WL 179604, at *7 (S.D.N.Y. Mar. 31, 1999) (even if a prison doctor was negligent in mis-diagnosing plaintiff's toxicity to a prescribed drug and increased the risk of injury to the plaintiff by administering the drug during daytime hours, that does not rise to the level of deliberate indifference), *aff'd*, *Williams v. Cohen*, 101 Fed. Appx. 862 (2d Cir. 2004).

### d.   Defendant McGrail

Plaintiff alleges that defendant McGrail was responsible for his allegedly deficient medical care because the jail administrator at HCCF denied plaintiff's grievance and otherwise failed to "correct" the decisions of the medical staff.  (AC, Fourth Cause of Action).  It is clear that "affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983[,]"[14] particularly if the grievance involves medical care, and the reviewer has no medical training.  *Manley v. Mazzuca*, 01CV5178, 2007 WL 162476, at *10 (S.D.N.Y. January 19, 2007) (citing *Foreman v. Goord*, 02 Civ. 7089, 2004 WL 1886928, at *7 (S.D.N.Y. Aug. 23, 2004) ("The fact that [the prison superintendent] affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement."); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506

---

[14] In order to be held liable for damages in a section 1983 action, a defendant must have been personally involved in the alleged violation.  *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

(S.D.N.Y. 2002)).[15]  *See also Brock v. Wright,* 315 F.3d 158, 164 (2d Cir. 2003)

(prison superintendent with no medical training who deferred completely to a prison

doctor in ruling on a grievance regarding medical care, while perhaps negligent, was

not "deliberately indifferent").  Defendant McGrail cannot be liable under Section

1983 for failure to supervise the prison medical staff, because he lacks the medical

training and authority to do so.  *See, e.g., Cuoco v. Moritsugu*, 222 F.3d at 111 (the

failure of non-doctors at a prison to intercede in the treatment of an inmate in not

unreasonable, because they lack the authority to intervene in medical decisions.)

### e.    Defendant Farber and Claims of Municipal Liability

Plaintiff also names the Herkimer County Sheriff as a defendant, apparently as

a vehicle for a claim of municipal liability for the alleged deprivation of his medical

care.[16]  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court

outlined the limited circumstances under which a municipality may be liable under

Section 1983.  Only when the municipality, through the execution of its policies,

actually deprives an individual of his constitutional rights, is it liable for the injury.

---

[15] "[I]t is not alleged that [the superintendent] is a doctor, or that he personally provided (or was capable of providing) plaintiff with medical care. Rather, it is alleged that he affirmed denial of a grievance against the two doctors for failing to provide care.  But a prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been 'personally involved' if he does so." *Id.*

[16] The plaintiff concedes that Sheriff Farber had no personal involvement in the alleged violations of his constitutional rights.  (Pltf.'s Dep. at 62).  Hence, any claim against Sheriff Farber, in his personal capacity, for damages would be subject to dismissal.

*Id.* at 694.   To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Because this court finds that there was no violation of plaintiff's constitutional rights by anyone associated with the HCCF, there is no basis for municipal liability under *Monell*.[17]

## V.    Patients' Bill of Rights

The amended complaint refers to alleged violations of plaintiff's rights under the Patients' Bill of Rights, which was created by New York state law.  NY Public Health Law §2803(1)(g).  A violation of state law would not implicate a federal right supporting a claim under Section 1983.  *See, e.g., Gillespie v. New York State Dep't of Correctional Services*, 2010 WL 1006634, at *6 (citing *Fox v. Brown*, 9:05-CV-1292 (LEK/GJD), 2007 WL 586723 at *9, n.5 (Report-Recommendation), adopted, 2007 U.S. Dist. LEXIS 11876 (N.D.N.Y. Feb. 21, 2007); *Parker v. DeBuono*, 98 Civ. 5765, 2000 WL 223841 at *2 (S.D.N.Y. Feb. 25, 2000)).

## VI.    Breach of Contract

Plaintiff alleged that defendant Menon breached a contract with HCCF by not

---

[17] In any event, a section 1983 claim against a municipality for the existence of a policy, custom or practice cannot be sustained  "by inference solely from evidence of the occurrence of the incident in question."  *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy).  The plaintiff appears to infer a municipal policy solely on the basis of the events of his case, which would vitiate his claim for municipal liability even if his constitutional rights had been violated.

treating him.  (AC, First Cause of Action).  Dr. Menon has documented that she had

no contract with HCCF and treated inmates at HCCF only as requested under her

consulting contract with HCMHD.  Dr. Menon persuasively argues that she did not

breach any contractual obligation to plaintiff, because she was never requested to

treat him by the HCMHD staff.  (Deft. Menon Memo. of Law at 8-10).  In any event,

a cause of action based on an alleged breach of contract does not state a viable claim

under section 1983.  *Green v. Greene*, 9:07-CV-0351 (GTS/DEP), 2009 WL

5874308, at *18 (N.D.N.Y. Mar. 30, 2009) (to the extent plaintiff may be asserting a

violation of section 1983 predicated upon an alleged breach of contract, such a claim

is not actionable) (Report-Recommendation), adopted, 2010 WL 455456, at *4

(N.D.N.Y. Feb. 2, 2010) (citing, *inter alia, City of Monterey v. Del Monte Dunes at

Monterey, Ltd.*, 526 U.S. 687, 728 (1999); *Batista v. Rodriguez*, 702 F.2d 393, 398

(2d Cir.1983) (the remedy for breach of a consent decree is a suit for breach of

contract or enforcement of the decree through judicial sanctions, including contempt,

not an action under § 1983)).  Given that the court recommends the dismissal of all

other causes of action in plaintiff's amended complaint, the state law contract claim

should also be dismissed, even if it was otherwise viable.  28 U.S.C. § 1367(c)(3)

(the district court may decline to exercise supplemental jurisdiction over a claim if

all other claims over which the court has original jurisdiction have been dismissed).

## VII.  Qualified Immunity

Certain defendants have asserted that they are entitled to qualified immunity in connection with plaintiff's claims.  In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right."  *Saucier v. Katz*, 533 U.S. 194, 201(2001), modified by *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 811 (2009) (holding that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory in all cases").  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  This court need not address qualified immunity with respect to plaintiff's various causes of action because, as discussed above, he has not established any alleged violations of his constitutional rights.

**WHEREFORE** it is hereby

**RECOMMENDED**, that both defense motions for summary judgment (Dkt. Nos. 87, 88) be **GRANTED** and the amended complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: December 15, 2010

Hon. Andrew T. Baxter
U.S.  Magistrate Judge